IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ANA VARGAS and )
PAULINA ALGARIN, )
　　　　　　　　　　　　　　　　　　　　　　)
　　　　　　　Plaintiffs, )
　　　　　　　　　　　　　　　　　　　　　　)
　　v. ) No. 09 C 7916
　　　　　　　　　　　　　　　　　　　　　　)
CITY OF CHICAGO, )
NICHOLAS ORLANDO, Star 12756, )
and M.P. KRUEGER, Star 4529, )
　　　　　　　　　　　　　　　　　　　　　　)
　　　　　　　Defendants. )

## **OPINION AND ORDER**

Plaintiffs Ana Vargas and Paulina Algarin, mother and daughter,[1] claim that defendants Nicholas Orlando and Michael Krueger, Chicago police officers (the "Officers"), illegally searched the apartment in which they lived and also used excessive force. Plaintiffs also name the City of Chicago as a defendant, contending it is liable to indemnify any liability of the individual defendants.

---

[1] When this suit was filed, Algarin was 17 years old. The claim on Algarin's behalf was brought by Vargas as her next friend. Although Algarin reached the age of majority in March 2010, she has never been substituted into the case in her individual capacity. Today's order will so provide.

Presently pending is defendants' motion for summary judgment as to all claims and plaintiffs' motion for partial summary judgment for liability on the illegal search claim. Since defendants are entitled to summary judgment, it is unnecessary to directly discuss plaintiffs' motion.

On a motion for summary judgment, the entire record is considered with all reasonable inferences drawn in favor of the nonmovant and all factual disputes resolved in favor of the nonmovant. *Crawford v. Metro. Gov't of Nashville & Davidson Cty., Tenn.*, 129 S. Ct. 846, 849 n.1 (2009); *Malen v. MTD Prods., Inc.*, 628 F.3d 296, 303 (7th Cir. 2010); *Stokes v. Bd. of Educ. of City of Chicago*, 599 F.3d 617, 619 (7th Cir. 2010). The burden of establishing a lack of any genuine issue of material fact rests on the movant. *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 691 (7th Cir. 2010); *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001). The nonmovant, however, must make a showing sufficient to establish any essential element for which it will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Montgomery v. Am. Airlines, Inc.*, 626 F.3d 382, 389 (7th Cir. 2010). The movant need not provide affidavits or deposition testimony showing the nonexistence of such essential elements. *Celotex*, 477 U.S. at 324; *Freundt v. Allied Tube & Conduit Corp.*, 2007 WL 4219417 *2 (N.D. Ill. Nov. 29, 2007); *O'Brien v. Encotech Constr.*, 2004 WL

609798 *1 (N.D. Ill. March 23, 2004). Also, it is not sufficient to show evidence of purportedly disputed facts if those facts are not plausible in light of the entire record. *See **Lorillard Tobacco Co. v. A & E Oil, Inc.**, 503 F.3d 588, 594-95 (7th Cir. 2007); **Yasak v. Ret. Bd. of Policemen's Annuity & Benefit Fund of Chicago**, 357 F.3d 677, 679 (7th Cir. 2004); **Lampley v. Mitcheff**, 2010 WL 4362826 *6 (N.D. Ind. Oct. 27, 2010). As the Seventh Circuit has summarized:

> The party moving for summary judgment carries the initial burden of production to identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." **Logan v. Commercial Union Ins. Co.**, 96 F.3d 971, 978 (7th Cir. 1996) (citing **Celotex Corp. v. Catrett**, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986) (citation and internal quotation omitted)). The moving party may discharge this burden by "'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case." **Celotex**, 477 U.S. at 325, 106 S. Ct. 2548. Once the moving party satisfies this burden, the nonmovant must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "The nonmovant must do more, however, than demonstrate some factual disagreement between the parties; the issue must be 'material.'" **Logan**, 96 F.3d at 978. "Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute." *Id.* (citation omitted). In determining whether the nonmovant has identified a "material" issue of fact for trial, we are guided by the applicable substantive law; "[o]nly disputes that could affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." **McGinn v. Burlington Northern R.R. Co.**,

> 102 F.3d 295, 298 (7th Cir. 1996) (citation omitted).
> Furthermore, a factual dispute is "genuine" for summary
> judgment purposes only when there is "sufficient evidence
> favoring the nonmoving party for a jury to return a verdict for
> that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,
> 249, 106 S. Ct. 2505 (1986). Hence, a "metaphysical doubt"
> regarding the existence of a genuine fact issue is not enough
> to stave off summary judgment, and "the nonmovant fails to
> demonstrate a genuine issue for trial 'where the record taken
> as a whole could not lead a rational trier of fact to find for the
> non-moving party . . . .'" *Logan*, 96 F.3d at 978 (quoting
> *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
> 475 U.S. 574, 587, 106 S. Ct. 1348 (1986)).

*Outlaw*, 259 F.3d at 837.

Resolving all genuine factual disputes and drawing all reasonable inferences in plaintiffs' favor, the facts assumed to be true for purposes of ruling on defendants' motion for summary judgment are as follows. On September 28 or 29, 2008, Orlando arrested John Doe on misdemeanor weapons charges. Prior to this arrest, Orlando had not known Doe. Krueger first met Doe at the police station, following Doe's arrest. While at the station, Doe volunteered information about narcotics sales and weapons at 2033 North Lawler in Chicago and Abel Rubio, whom Doe believed lived there. The Officers did not offer to give Doe anything for providing this information and Doe was released after being processed on the weapon charges.

On September 30, however, Doe returned to the station and provided additional information to the Officers. Doe described 2033 North Lawler as a "single family residence." Doe stated that, when there, Rubio met him at the front door on the first floor, they walked through the first floor, and took a back stairwell to the basement, where Doe indicated he wanted to buy marijuana. Rubio went upstairs and returned with a bag of marijuana that they smoked together. While in the basement, Rubio showed Doe two guns that he had. Rubio also told Doe he could provide cocaine and heroin. Doe also informed the officers that Rubio showed a softball-sized chunk of white powder that Doe believed to be heroin.

As of September 2008, 2033 North Lawler was actually a multifamily residence with three separate apartments, one each in the basement, first floor, and second floor. The County Assessor's website listed the building as a multifamily unit. The building was owned by Vargas's mother. Vargas lived on the first floor with some of her children. Vargas's mother and grandmother and Algarin lived on the second floor. Vargas's brother Carlos lived in the basement. At the time, Rubio was Vargas's boyfriend and occasionally stayed on the first floor. Prior to conducting their search, the Officers were not aware of any of this information.

They did not check the Assessor's website and Doe only told them that Rubio lived at the address and it was a single-family home.

The building had a front entranceway and side entranceway. The side entrance led to the basement. The front entrance had an interior vestibule that contained three mailboxes. The interior vestibule had a door on the left leading to the first floor apartment and a stairway on the right leading up to the door for the second floor apartment. On the back of the house, there were two electric meters. One was for the first floor and basement and the other was for the second floor. Again, the Officers were unaware of this information before conducting the search, but Orlando would have seen the front vestibule arrangement before breaking down the door leading to the first floor apartment. No officer went to the second floor apartment.

Separate from either exterior entranceway, the building also had an interior stairway that went between the first floor apartment and basement apartment. Each of these apartments had a door leading to this stairway. Plaintiff contends the doors from the stairway to each apartment had key locks. The cited evidence, however, does not support this contention. Vargas's testimony only supports that there were doors; she does not state whether or not they had key locks nor that these doors were kept locked. She testified that, through the back

stairway, Rubio had "free access" between the basement and first floor apartments. Prior to the search, the information the Officers had was Doe's statement that Rubio met him at the front door of the first floor apartment and the two of them walked through the first floor to get to the basement.

Prior to seeking the search warrant, the Officers drove Doe past 2033 North Lawler and he identified the building. They did not attempt to get into the backyard where the electric meters would be in view. Doe also identified Rubio from a photo array. Doe told the officers he believed the building was a single family residence. When driving past the front of the building, the Officers saw nothing that made it apparent that the building was not a single-family residence.

In the complaint for a search warrant, Orlando stated the information that had been provided by Doe. Orlando did not state that this was the first time Doe had acted as an informant nor that Orlando had only recently had his first encounter with Doe. Doe was available and did testify before the judge who approved the search warrant. Doe corroborated the statement in the complaint. The warrant was approved and provided that Rubio and the premises could be searched and the items to be seized were: "Heroin, Cocaine, Cannabis to wit a controlled substance, any paraphernalia used in weighing, cutting, or mixing of illegal drugs, any money, and records detailing illegal drug transactions, 1 Blue

steel .9mm, semi-automatic hand gun, 1 .380 cal, blue steel, semi-automatic hand gun along with any documents showing proof of residency."

When executing the search warrant, Krueger and other officers went in the side door that went directly to the basement. His weapon was drawn and he found Rubio there, measuring and bagging cannabis for another man who was present. Carlos was also present. Heroin, cocaine, and a revolver were also found in the basement. Krueger thereafter went directly to the first floor through the interior back stairway.

Orlando and other officers broke down the front door with a ram. They entered with their weapons drawn and immediately came upon the two plaintiffs. Orlando ordered that they put their hands up and get on the ground. They complied. Plaintiffs were not handcuffed. After 20 minutes, plaintiffs were allowed to sit on dining room chairs while the search continued. One of the officers told plaintiffs they would rip up the walls if plaintiffs did not tell them where the "stuff" was. Officers were rude to plaintiffs and used profanity. A second gun was found in a first floor bedroom. Orlando was able to access the basement apartment through the back stairway. Rubio and another man were taken into custody. Plaintiffs were not.

A search pursuant to a search warrant issued by a judge is lawful unless the presumption of the validity of the warrant is overcome. *See United States v. Simmons*, 771 F. Supp. 2d 908, 2011 WL 1045527 *3-4 (N.D. Ill. March 22, 2011). The presumption of validity may be overcome if it is shown the officer who provided information supporting the warrant "intentionally or recklessly withheld material facts from the warrant-issuing judge." *Id.* at *4 (quoting *Whitlock v. Brown*, 596 F.3d 406, 410-11 (7th Cir. 2010)); *accord Suarez v. Town of Ogden Dunes, Ind.*, 581 F.3d 591, 596 (7th Cir. 2009). To invalidate the warrant, the incorrect or omitted information must be material, that is, necessary to the judge's determination that there was probable cause for the search. *Suarez*, 581 F.3d at 596. The validity of the warrant is determined based on what the officer knew or should have known at the time of the warrant's issue. *United States v. White*, 416 F.3d 634, 638 (7th Cir. 2005). If officers knew or should have known that a building contains multiple units, a warrant based on the building being a single-family residence will not be valid unless evidence supports that all units need to be searched or that the target of the investigation has access to the entire structure. *Jacobs v. City of Chicago*, 215 F.3d 758, 767-68 (7th Cir. 2000).

Plaintiffs contend the Officers should have known that 2033 North Lawler was not a single-family residence. However, Doe provided information that Rubio let him into the first floor and brought him down to the basement. When driving past the house, nothing indicated that it was not a single-family residence. The separate mailboxes were not visible from the street nor were the two electric meters that were in the backyard. Reasonable investigation did not require that the Officers go into the vestibule or peak into the backyard before seeking the warrant. Plaintiffs contend the Officers should have checked the assessor's website, which indicated the building was a multi-unit building and, they cite no case law mandating such a procedure. Additionally, the Officers searched the first floor and basement units and, consistent with Doe's information, Rubio actually had access to both of those units. They did not enter the second floor apartment. Plaintiffs also contend the search warrant is deficient because the Officers did not inform the judge that Doe was a first-time informant. Considered either separately or together with the evidence regarding the building being multi-unit, this is not a material fact that was necessary to the judge's determination of probable cause to search.

Contrary to plaintiffs' contention, *Simmons*, *supra*, is distinguishable from the present case. Like the present case, the confidential informant in

***Simmons*** was a first-time informant and he provided information about unrelated drug and weapons violations. However, the ***Simmons*** informant offered the information while still in custody; he did not return the day after being released and offer additional information as did Doe in the present case. Also, unlike Doe in this case, the ***Simmons*** informant had a lengthy criminal history and had provided false information in the past, facts that were omitted in seeking the search warrant in that case.

Plaintiffs also contend execution of the warrants was improper because the Officers should have realized there were separate apartments. It is true that the front vestibule had three mailboxes. However, consistent with Doe's information, the first floor and basement were essentially one apartment with free access between the two. The Officers did not have reason to discontinue the search.

Plaintiffs have not presented a genuine factual dispute supporting that the search of Vargas's first floor apartment was improper. Defendants are entitled to summary judgment on the illegal search claim. Regarding excessive force, plaintiffs' only contention is that the Officers' presentation of weapons was excessive force because the search was unlawful. Since the illegal search claim fails, this contention also fails. Since the claims against the individual Officers fail, the claim against the City will also be dismissed.

IT IS THEREFORE ORDERED that plaintiff Paulina Algarin in her individual capacity is substituted into this case replacing Ana Vargas in her representative capacity as next friend of P.A. The Clerk of the Court shall accordingly amend the docket. Defendants' motion for summary judgment [30] is granted and plaintiffs' motion for partial summary judgment [34] is denied. The Clerk of the Court is directed to enter judgment in favor of defendants and against plaintiffs dismissing plaintiffs' cause of action with prejudice.

ENTER:

*William T. Hart*
UNITED STATES DISTRICT JUDGE

DATED: JULY 21, 2011